# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY M. TRACY, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:14-cv-02202-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| US BANK, HOME MORTGAGE, | ) |
| NATIONAL DEFAULT SERVICING | ) |
| CORPORATION, DOES I-X, inclusive and | ) |
| ROE CORPORATIONS I-X, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 64), filed by Defendant U.S. Bank, National Association ("U.S. Bank"). Plaintiff Anthony M. Tracy ("Plaintiff") filed a response (ECF No. 71),[1] and U.S. Bank filed a reply, (ECF No. 75). For the reasons discussed below, U.S. Bank's Motion for Summary Judgment is **GRANTED in part and DENIED in part.**

## I.  BACKGROUND

This case arises out of foreclosure proceedings against Plaintiff's property located at 106 Boysenberry Lane, Henderson, Nevada 89074 ("the Property"). Plaintiff purchased the Property around July 2008, obtaining an original mortgage for the purchase price of roughly $150,000. (Am. Compl. ¶ 5, ECF No. 11). On or about March 1, 2009, U.S. Bank became the beneficiary of the loan documents for the mortgage. (*Id.* ¶ 7). On June 22, 2011, in response to Plaintiff's request for a loan modification through the Home Affordable Modification Program, Plaintiff and U.S. Bank entered into a loan modification agreement ("First Modification

---

[1] In light of Plaintiff's *pro se* status, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Agreement"). (*Id.* ¶¶ 8, 11).  Plaintiff's mortgage payments on the First Modification Agreement were $816.55/month. (*Id.* ¶ 10).

On or about September 2, 2011, U.S. Bank claims to have discovered an error in processing Plaintiff's HAMP application, and re-issued the loan modification agreement ("Second Modification Agreement"). (Pace Dec. ¶ 12, ECF No. 66).  This agreement was executed by Plaintiff on October 8, 2011. (*Id.* ¶ 13).  Plaintiff's mortgage payments on the Second Modification Agreement were $766.38/month. (Am. Compl. ¶ 18).

After issuing the Second Modification Agreement, U.S. Bank claims to have discovered another error in the agreement that required modification. (Pace Dec. ¶ 15).  Specifically, U.S. Bank claims it failed to include the escrow portion of the modified mortgage. (*Id.*).  U.S. Bank adjusted the partial claim figures to include the escrow portion and thereafter sent a revised loan modification agreement ("Revised Agreement") to Plaintiff on December 20, 2011. (*Id.* ¶ 16).  Under this Revised Agreement, the mortgage payments returned to $816.55/month. (Am. Compl. ¶ 22).  On December 27, 2011, U.S. Bank advised Plaintiff in writing and allegedly by phone that the Revised Agreement had to be signed and completed. (Pace Dec. ¶ 17).  Plaintiff rejected the revised agreement, stating that the modification was not in his "best interest." (Am. Compl. ¶ 23).

Through March and April 2012, Plaintiff continued to send checks for $766.38 to U.S. Bank. (*Id.* ¶¶ 30, 34).  Eventually, U.S. Bank began returning the checks to Plaintiff as not representing the full amount of payments due under the loan. (*Id.* ¶ 44).  In April 2012, U.S. Bank informed Plaintiff that he was in default and a foreclosure action could be initiated against him. (*See* Default Correspondence, Ex. O to Pace Decl., ECF No. 66-15).  The last mortgage payment accepted by U.S Bank was in February, 2012. (Pace Dec. ¶ 28).  In November 2014, U.S. Bank informed Plaintiff it would honor the lower rate in the Second Modification Agreement. (*See* Pl.'s Response 6:23–27).  Thereafter, U.S. Bank sent a Final

Loan Modification Agreement ("Final Agreement"), which included a principal balance of $116,214.25, modified note rate of 4.625%, and $771.46/month payment amount. Plaintiff rejected the Final Agreement as being inconsistent with the Second Modification Agreement. (*Id.*). In particular, Plaintiff took issue that the Final Agreement extended the maturity date of the loan by three years. (*Id.*).

On October 10, 2014, Plaintiff filed a Complaint in state court against U.S. Bank. (Ex. A to Pet. Removal, ECF No. 1). In December 2014, U.S. Bank removed the instant action to this Court. (Pet. Removal, ECF No. 1). Shortly thereafter, Plaintiff filed an Amended Complaint asserting the following claims against US Bank: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) specific performance; (4) fraud; and (5) intentional infliction of emotional distress. (Am. Compl. ¶¶ 52–78). U.S. Bank filed the instant Motion for Summary Judgment on January 25, 2016. (ECF No. 64).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

### A.   Breach of Contract

To establish a breach of contract claim, a plaintiff must show that: (1) there was a valid contract; (2) the defendant breached the terms of the contract; and (3) the plaintiff suffered damages as a result of the breach. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp.2d 1234, 1240 (D. Nev. 2008). In general, courts "should not rewrite contract provisions that are otherwise unambiguous." *Id.*; *see also Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990) ("[C]ontracts will be construed from the written language and enforced as written."). In Nevada, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison*, 797 P.2d at 977.

Plaintiff asserts that U.S. Bank breached the Second Modification Agreement by "failing to accept payments in compliance with the contract." (Pl.'s Response 8:16–17, ECF No. 71). U.S. Bank argues that it was permitted to modify the agreement under the Errors and Omissions Compliance Agreement ("EOCA") contained within the Second Modification Agreement. (Def.'s MSJ 11:9–11, ECF No. 64). Plaintiff does not contest signing the EOCA. (*See* Pl.'s Response 10:3–4). However, Plaintiff argues that U.S. Bank did not provide sufficient notice as required under the EOCA. (*Id*. 10:19–24). Specifically, Plaintiff claims that U.S. Bank never indicated that the modification was made due to an error and failed to provide the required 30 days to comply before issuing a non-approval letter on Plaintiff's mortgage assistance request. (*Id*. 10:24–11:3).

The EOCA states that the "Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in connection with the modification of the Loan. . .within 30 days of receipt of written request from the lender." (EOCA, Ex. H to Pace Decl., ECF No. 66-8).  Contrary to Plaintiff's assertion, nowhere in the agreement does it specify that U.S. Bank must provide the exact reason for the request.  Rather, the Court finds the EOCA unambiguously states that U.S. Bank satisfies its notice requirement by providing any written request.  Here, U.S. Bank sent Plaintiff a written request for modification along with the Revised Agreement. (*See* Written Request, Ex. K to Pace. Decl., ECF No. 66-11).

Additionally, the Court finds that the 30-day timeframe created an obligation for the borrower to comply, not the lender.  Plaintiff fell short of this obligation when he communicated his rejection of the Revised Agreement. (*See* Pl.'s Response 4:4–6).  Thus, U.S. Bank did not have to wait the full 30 days before issuing the non-approval letter.

Accordingly, the Court finds U.S. Bank did not breach the Second Modification Agreement in requiring that Plaintiff sign the Revised Agreement.  U.S. Bank is therefore entitled to summary judgment on this claim.

**B.  Breach of Covenant of Good Faith and Fair Dealing**

In Nevada, every contract imposes upon each party a duty of good faith and fair dealing in its performance and execution. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998).  A breach occurs where "the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.,* 808 P.2d 919, 922 (Nev. 1991).  In general, good faith is a question of fact. *Mitchell v. Bailey & Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980).

Plaintiff asserts that U.S. Bank never informed him that the Second Modification Agreement was revised due to a clerical error. (*See* Pl.'s Response 3:17–19). While the Court does not find that U.S. Bank had an express duty under the EOCA to inform Plaintiff of the reason for the modification, the Court does find that Plaintiff has raised a genuine issue of material fact as to whether U.S. Bank had a good faith duty to inform Plaintiff. Without such information, Plaintiff had no reason to know U.S. Bank was implicating the EOCA when it sent the Revised Agreement and could not conduct himself accordingly. Therefore, after drawing all justifiable inferences in favor of Plaintiff, the Court denies summary judgment on this claim.

### C. Specific Performance

In Plaintiff's Amended Complaint, he raises a claim for specific performance. (Am. Compl. ¶ 64). Specific performance is a form of contract remedy and not an independent cause of action. *See Carione v. Clark*, 618 P.2d 346, 348 (1980); *see also Silver State Board, LLC v. Beasley FM Acquisition Corp.*, No. 2:11–cv–01789–MMD, 2012 WL 3996369, at *2 (D. Nev. Sept. 11, 2012) ("[A] request for specific remedy is not sufficient to state a claim upon which relief can be granted."). Accordingly, the Court grants summary judgment in favor of U.S. Bank on the independent cause of action for specific performance.

### D. Fraud

To succeed on a claim for fraud, a plaintiff must show, by clear and convincing evidence, that: (1) a defendant made a false representation; (2) the representation was made with the defendant's knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation); (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied upon the misrepresentation; and (5) the plaintiff suffered damage as a result of the reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

Plaintiff argues that U.S. Bank committed fraud by failing to inform him of the error in the Second Modification Agreement, and knowingly breaching the contract. (*See* Pl.'s Response 17:21–25). Additionally, Plaintiff asserts that U.S. Bank committed fraud by wrongfully placing Plaintiff in default despite being "unable to track" all of Plaintiff's funds in his account. (*Id.* 18:1–2). Lastly, Plaintiff argues that U.S. Bank committed fraud by sending various requests for "false unpaid loan balances and lie[s] about his credit." (*Id.* 20:2–4).

Plaintiff's arguments largely rely on the assumption that U.S. Bank breached the Second Modification Agreement. However, as explained above, the Court finds that no such breach of contract occurred. Furthermore, beyond conclusory assertions, Plaintiff has not presented sufficient evidence to establish that a genuine issue of material fact exists as to whether U.S Bank committed the elements of fraud. Accordingly, the Court grants summary judgment in favor of U.S. Bank as to Plaintiff's fraud claim.

**E. Intentional Infliction of Emotional Distress**

To establish a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must demonstrate that: (1) a defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) [the plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate causation." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community"; however, this description does not encompass acts which are merely "inconsiderate" or "unkind." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998).

Plaintiff argues in support of his IIED claim that "US Bank's conduct of fraud and deceit was extreme and outrageous." (Pl.'s Response 24:11–13). Specifically, Plaintiff claims "[b]y breaching the September 30, 2011 Loan Modification Agreement and committing countless acts of fraud US Bank has cause[d] life threating emotional and psychological stress on

plaintiff." (*Id.*).  As explained above, Plaintiff has not presented sufficient evidence to establish either his claim for fraud or breach of contract.  Moreover, Plaintiff has not presented competent evidence to establish that a genuine issue of material fact exists as to whether U.S. Bank engaged in conduct that is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *See Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998).  Accordingly, the Court grants summary judgment in favor of U.S. Bank as to Plaintiff's IIED claim.

### F. Prayer for Punitive Damages

To receive an award for punitive damages, a plaintiff must demonstrate by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice, either express or implied. N.R.S. § 42.005(1).  This standard requires that the plaintiff produce evidence "so clear as to leave no substantial doubt[,]" *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2011), that the defendant "acted with a culpable state of mind[,]" *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Here, the Court finds no facts to support an award of punitive damages.  Beyond conclusory assertions, Plaintiff has failed to proffer any evidence of malice or oppression by U.S. Bank.  Further, there is no evidence that U.S. Bank acted with intent to vex or injure.  The Court therefore strikes Plaintiff's prayer for punitive damages.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that U.S. Bank's Motion for Summary Judgment (ECF No. 64) is **GRANTED in part and DENIED in part.**  Pursuant to the foregoing, Plaintiff's claim for Breach of Covenant of Good Faith and Fair Dealing survives.

**IT IS FURTHER ORDERED** that Plaintiff's Prayer for Punitive Damages is stricken.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order by November 1, 2016.

**DATED** this __30___ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge